IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REBECCA STONEBACK, on Behalf of  )
  Herself and All Those            )  Civil Action
  Similarly Situated; and          )  No. 12-cv-03287
MICHAEL GRUBE, on Behalf of       )
  Himself and All Those            )
  Similarly Situated,              )
                                 )
             Plaintiffs             )
                                 )
     vs.                           )
                                 )
ARTSQUEST;                        )
JEFFREY PARKS;                    )
WALTER KEIPER, JR.; and           )
TONYA DODDY,                      )
                                 )
           Defendants                )

*   *   *

APPEARANCES:

        JUSTIN L. SWIDLER, ESQUIRE
            On behalf of plaintiffs

        PATRICK J. REILLY, ESQUIRE
            On behalf of defendants

*   *   *

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

      This matter is before the court on plaintiffs' Notice

of Motion for Class Certification filed January 31, 2013.[1]

---

    [1]   Plaintiffs' Notice of Motion for Class Certification was
accompanied by Plaintiffs' Brief in Support of Motion for Class Certification
and nine untitled exhibits.

       At the hearing on plaintiffs' motion, held on April 2, 2013
plaintiffs introduced the same nine exhibits, and titled them as Exhibits A

(Footnote 1 continued):

The Memorandum of Law of Defendants in Opposition to Plaintiffs' Motion for Class Certification was filed March 8, 2013.[2]

<u>SUMMARY OF DECISION</u>

For the following reasons, plaintiffs' motion for class certification is denied.  Specifically, I conclude that plaintiffs have failed to meet all the requirements for class certification under Federal Rule of Civil Procedure 23(a).  More specifically, I conclude that plaintiffs have failed to establish that plaintiff Rebecca Stoneback is a adequate representative of the proposed class.

Moreover, I conclude that plaintiffs have failed to meet the requirements for class certification under Federal Rule of Civil Procedure 23(b) because individual issues, as opposed to issues common to the class, predominate over essential elements of plaintiffs' claims.

---

(<u>Continuation of footnote 1</u>):

through I.  (Hearing Before the Honorable James Knoll Gardner[,] United States District Court (sic) Judge, April 2, 2013 ("N.T. April 2, 2013"), page 8).

Also at the April 2, 2013 hearing plaintiffs introduced as Exhibits J through O 28 color photographs of 6 commemorative beer steins sold as memorabilia at Musikfest, an annual music festival hosted in Bethlehem, Pennsylvania, by defendant ArtsQuest, from 2006 (Exhibit J) through 2011 (Exhibit O), respectively.  (N.T. April 2, 2013, page 22).

[2]     Defendants' memorandum was accompanied by Exhibits A through E, which defendants re-submitted at the April 2, 2013 hearing as Exhibits 1 through 5 (N.T. April 2, 2013, pages 11 and 19).

JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiffs' claims allegedly occurred within this judicial district and because defendants reside within this judicial district.

PROCEDURAL HISTORY

This case arises from alleged deceptive business practices and fraudulent conduct of defendant ArtsQuest and its officers in connection with the sale and marketing of memorabilia sold at Musikfest, a music festival hosted by ArtsQuest annually in Bethlehem, Pennsylvania.

Plaintiffs allege that defendants sold commemorative beer steins and mugs at Muskifest, which defendants advertised as being made in Germany, when in reality the steins and mugs were made in China.  Plaintiffs assert that defendants knew the true origin of the merchandise since at least 2005.

On June 11, 2012 plaintiff Rebecca Stoneback filed a five-count Civil Action Complaint on behalf of herself and all others similarly situated, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")[3] against

---

[3]    18 U.S.C. §§ 1961 to 1968.

defendants Jeffrey Parks[4], Walter Keiper, Jr.[5], and Tonya Doddy[6] ("individual defendants") (Count I); RICO violations against ArtsQuest (Count II); violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")[7] against ArtsQuest (Count III); Fraud against ArtsQuest (Count IV); and Piercing the Corporate Veil against the individual defendants (Count V).  Plaintiff Stoneback alleged in her Civil Action Complaint that she purchased Musikfest Merchandise from defendant ArtsQuest in and around 2009 and again in 2011.[8]

On July 23, 2012 plaintiffs filed their First Amended Class Action Complaint, which added plaintiff Michael Grube as a named plaintiff.  Plaintiff Michael Grube alleged in the First Amended Class Action Complaint that he purchased Musikfest Merchandise from defendant ArtsQuest every year from 1997 through 2011.[9]

On July 26, 2012 defendants filed their answer to plaintiffs' First Amended Class Action Complaint.

---

[4]     Jeffrey Parks was the President of ArtsQuest.

[5]     Walter Keiper, Jr. was the ArtsQuest Senior Vice President of Finance and Administration.

[6]     Tonya Doddy was a managerial employee at ArtsQuest.

[7]     Act of Dec. 17, 1968, P.L. 1224, No. 387, § 2; reenacted, Act of November 24, 1976, Nov. 24, 1976, P.L. 1166, No. 260, § 1, as amended, 73 P.S. § 201-2(4)(iv).

[8]     Civil Action Complaint, ¶ 33.

[9]     First Amended Civil Action Complaint, ¶ 39.

On August 24, 2012 I conducted a Rule 16 Status Conference by telephone conference call in the within matter and set a December 31, 2012 deadline for the parties to complete class discovery and a January 31, 2013 deadline for plaintiffs to file a motion for class certification.

Accordingly, on January 31, 2013 plaintiffs filed the within motion for class certification.  On March 8, 2013 defendants responded in opposition.  On March 27, 2013 plaintiffs filed a letter reply brief in support of their motion.

On April 2, 2013 I held a hearing and heard argument on plaintiffs' class certification motion and took matter under advisement.  Hence this Opinion.

<u>STANDARD OF REVIEW</u>

Rule 23 of the Federal Rules of Civil Procedure contains the prerequisites for class certification.  A class may be certified only if the court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23 have been satisfied. <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 296 (3d Cir. 2006).

To obtain class certification, plaintiffs must establish that each of the elements of Rule 23(a) are met, together with one of the requirements of Rule 23(b).  <u>Baby Neal v. Casey</u>, 43 F.3d 48, 55 (3d Cir. 1994).

Pursuant to Rule 23(a), a class may be certified only if:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

If the requirements of Rule 23(a) are satisfied, Rule 23(b) sets forth the type of class actions which may be maintained.

In this case, plaintiffs move for class certification pursuant to Rule 23(b)(2) and (3).

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole".

Rule 23(b)(3) provides that a class action may be maintained if:

the court finds that the questions law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy.  The matters pertinent to the findings include:

-6-

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

In deciding whether the requirements of Rule 23 have been met to certify a class, the district court must make whatever factual and legal inquiries necessary and must consider all relevant evidence and arguments.  In re: Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 307 (3d Cir. 2008).

The requirements set forth in Rule 23 are not "mere pleading rules" and the court must "delve beyond the pleadings to determine whether the requirements for class certification are satisfied."  Id. at 316.

Accordingly, a court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits -- including disputes touching on elements of the cause of action.  Id. at 307.  Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. Id.

<u>FACTS</u>

Upon consideration of the pleadings, record papers, exhibits, and declarations, as required by the forgoing standard of review, the pertinent facts are as follows.

Defendant ArtsQuest is a non-profit arts organization based in Bethlehem, Pennsylvania.  Defendant Jeffrey Parks was the President of ArtsQuest.  Defendant Walter Keiper, Jr. was the ArtsQuest Senior Vice President of Finance and Administration.  Defendant Tonya Doddy was a managerial employee at ArtsQuest.[10]

Since 1984, ArtsQuest has hosted an annual music festival known as "Musikfest".  At the festival, ArtsQuest sells merchandise, including souvenir beer steins and souvenir stoneware mugs.[11]

Plaintiff Rebecca Stoneback is an adult individual who purchased beer steins from ArtsQuest in 2009 and 2011.  Ms. Stoneback was also employed by ArtsQuest from approximately 2009 through March 2012 as an instructor and a store employee who was responsible for stocking and selling merchandise.[12]

---

[10]    Defendants Answer and Affirmative Defenses to Plaintiffs' Complaint filed July 20, 2012.

[11]    <u>Id.</u>

[12]    Plaintiffs' Exhibit H.

-8-

Plaintiff Michael Grube is an adult individual who purchased beer steins from ArtsQuest each year from 2005 until 2011 and mugs from ArtsQuest each year from 2005 through 2012.[13]

Between 2006 and 2012 ArtsQuest sold hundreds of beer steins and mugs to hundreds of customers.[14]  In 2007 and 2008 ArtsQuest's "Stein Reservation Form", which customers could use to order beer steins and mugs, indicated that the stoneware mugs were "from Ger[]z Stein Co. in Germany".[15]

Additionally, ArtsQuest's online purchase order webpage for the 2011 stoneware mug indicated that there were "Only 400 of this German made Stoneware Mug annually".  The purchase order for the 2011 steins indicate that the "Musikfest 2011 Stein is handcrafted in Germany at the Gerz factory".[16]

ArtsQuest also advertised both beer steins and mugs as "from Gerz Stein Co. in Germany" in various marketing materials. Other marketing materials referred to the beer steins and mugs as "Authentic German Musikfest Stein[s]" and "Authentic German

---

[13]     Plaintiffs' Exhibit G.  Although the precise number of steins and mugs sold is not readily apparent from the record, at the April 2, 2013 hearing defendants averred that approximately 147 steins and 250 mugs were sold annually (N.T. April 2, 2013, page 63).

[14]     Defendants' Exhibit 1.

[15]     The 2007 and 2008 purchase orders indicate that the mugs are from "Gertz Co." rather than "Gerz Co.", however that appears to be a typographical error.

         The 2009, 2010 and 2011 "Reservation Form" does not refer to the country of origin of the beer steins or mugs.  The purchase order forms from 2006 and 2012 do not appear in the record.  (Plaintiffs' Exhibit B).

[16]     Plaintiffs' Exhibit C.

Musikfest Stoneware Mug[s]".  Additionally, at some point, in its souvenir shop, ArtsQuest displayed a sign indicating that Musikfest Steins were "Made in Germany".[17]

Between 2006 and 2011 the bottom of the steins contain an insignia which states "Design exclusively by Gerz...[,] GERMANY".  In contrast, the 2012 Musikfest steins' insignia states "DOMEX[,] MADE IN GERMANY[,] Stoneware Body made in China - All other components made in GERMANY".  The 2012 Musikfest mugs have a sticker which states: "Body made in China, decoration Germany".[18]

However, in each year, the bodies of the mugs were not made in Germany, but rather were manufactured in China.  Only the artwork on the mugs was designed and applied in Germany.  Likewise the beer steins were also manufactured in China, and only the artwork and lids were completed in Germany.[19]

In general, steins made in China and decorated in Germany cost between $14.58 and $20.00.  In contrast, any stein made and decorated in Germany costs $35 to $50, or more.[20]

---

[17]     Plaintiffs' Exhibit C.

[18]     Defendants' Exhibit 3.

[19]     Plaintiffs' Exhibit D.

[20]     Plaintiffs' Exhibit E.

Between 2009 and 2011 ArtsQuest paid between $14.98 and $17.38 for each beer stein.  ArtsQuest charged customers approximately $69.99 for each stein between 2009 and 2011.[21]

The stoneware mugs are less expensive than the beer steins.  For example, in 2008 ArtsQuest paid $6.65 for the stoneware mugs.  Each year ArtsQuest sold the mugs for $17.99.[22]

As early as 2005 ArtsQuest received information that the Musikfest mugs were manufactured in China.  Specifically, on August 19, 2005 defendant Tanya Doddy wrote an email to Manuel M. Wiesbender, who worked for Domex Companies, ArtsQuest's exporter of the mugs and steins.  In the email Ms. Doddy wrote:

> On the stoneware mugs for next year can you please not have the "made in china sticker" put on the bottom of them.  Many questioned that since in the past thye [sic] were stamped "Made in Germany" with the Domex label.

On August 23, 2005 Mr. Wiesbender responded to Ms. Doddy in an email as follows:

> On the Stoneware mugs, we should be able to comply in the future.  The mug bodies have always come from China but obviously we decorate them here in Germany for your order.  On these low-price items, we can just not be competitive with actual German mug production.  Anyway, we have used a different importer this year and they insisted on the original marking.  We will see what arrangements we can make in 2006 [in] terms of getting the DOMEX mark put on there again.  Make sure you remind me of this again next year[.][23]

---

[21]    Plaintiffs' Exhibit E and G.

[22]    Plaintiffs' Exhibit E and L.

[23]    Plaintiffs' Exhibit D.

In 2011, as it had in the past, ArtsQuest ordered its Musikfest beer steins from M. Cornell Importers, Inc.  These steins were to be made in China and decorated in Germany.[24]

However, the factory in China that was making the steins went out of business.  Because the deadline by which ArtsQuest needed the steins could not be met if the steins were shipped from China to Germany for decorating, as had been done in prior years, M. Cornell Importers, Inc. arranged for the printed decorations and the custom lids to be shipped from Germany to China and applied to the steins in China.

Accordingly, these steins were decorated in, and shipped directly from, China to ArtsQuest.  The shipment was accompanied with an invoice from Xiamen Fortune Import & Export Co., LTD, a Chinese company.[25]

In 2012 plaintiff Rebecca Stoneback, who was working for ArtsQuest, encountered the invoice and was concerned that the merchandise was being marketed to customers as being made in Germany, when in fact they were made China.[26]

Plaintiff Stoneback raised her concern to defendants Doddy and Keiper.  Subsequently ArtsQuest terminated Ms. Stoneback's employment.

---

[24]     Plaintiff's Exhibit E.

[25]     Plaintiff's Exhibits E and I

[26]     Defendants' Exhibit 4.

In a letter from plaintiffs' counsel to ArtsQuest
President, defendant Jeffrey Parks, dated April 24, 2012,
plaintiff threatened ArtsQuest with litigation concerning
defendants' alleged misrepresentations concerning the origin of
the steins and mugs and Ms. Stoneback's termination from
ArtsQuest.  However, plaintiff Stoneback offered to release all
of her claims against ArtsQuest in exchange for a monetary
settlement.[27]

After defendants rejected Ms. Stoneback's offer, she
filed the within action on behalf of herself and all of those
similarly situated.[28]

Numerous news stories appeared in newspapers and local
television regarding this lawsuit.  Two or three purchasers of

---

[27]    Defendant's Exhibit 4.  Plaintiffs' counsel attached a draft
complaint with the April 24, 2012 letter.  This draft complaint asserted
claims for violations of the Pennsylvania Whistleblowers Act, Act of Dec. 12,
1986, P.L. 1559, No. 169 §§ 1-8, 43 P.S. §§ 1421- 1428; Termination in
Violation of Public Policy; Pennsylvania Unfair Trade Practices and Consumer
Protection Law, 73 P.S. §§ 201-1 through 201-9.3; Fraud; and Piercing the
Corporate Veil.

In the draft complaint, Ms. Stoneback brought the action on behalf
of herself only and did not purport to represent others similarly situated.

[28]    Plaintiff Stoneback also filed a separate action concerning her
termination from ArtsQuest which proceeded before Senior United States
District Judge Michael M. Baylson in case number 12-cv-03286.  In that
lawsuit, plaintiff Stoneback asserted a claim for violations of the
Pennsylvania Whistleblower Act and a claim for wrongful termination in
violation of public policy.  (See Defendants' Exhibit 4).

On May 22, 2013 Judge Baylson entered judgment in favor of
plaintiff Stoneback and against defendants ArtsQuest, Jeffrey Parks, Walter
Keiper, Tonya Doddy, and Cindy Karchner (who is not a party to the above-
captioned case).  (See Plaintiff Stoneback's Praecipe to File Declaration in
Support of Her Motion for Class Certification, which praecipe was filed
May 24, 2013 (Document 30)).

the Musikfest beer steins and mugs contacted ArtsQuest seeking an explanation regarding the allegations that the products were made in China.  ArtsQuest Senior Vice President, defendant Walter Keiper, Jr., advised the individuals that the bodies of the mugs were made in China, but that various modifications were made to mugs and steins before they were shipped to ArtsQuest for sale at Musikfest.  Since the lawsuit was filed, there have not been any purchasers who have sought a refund.[29]

On January 31, 2013 plaintiffs filed the within motion for class certification.  Plaintiffs seek an order certifying as the class all individuals who purchased Musikfest Beer Steins and Stoneware Mugs from defendant ArtsQuest from 2006-2012.

Further, plaintiffs seek certification of Michael Grube and Rebecca Stoneback as representatives of the class, and certification of plaintiffs' counsel, Swartz Swidler, LLC, as class counsel.

<u>CONTENTIONS OF THE PARTIES</u>

<u>Contentions of Plaintiffs</u>

Plaintiffs contend that their motion for class certification should be granted because the members of the class are ascertainable and because the class satisfies the prerequisites for certification under Rule 23(a) and Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

---

[29]     Defendant's Exhibit 5.

Plaintiffs contend that their motion for class certification meets the requirements of Rule 23(a) because (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defense of the class ("typicality"); and the representative parties will fairly and adequately protect the interests of the class ("adequacy").

Plaintiffs contend that their proposed class meets numerosity requirement of Rule 23(a) because the joinder of all class members would be impracticable.  Plaintiffs assert that hundreds of customers purchased beer steins in the applicable six-year period.  Further, plaintiffs assert that class members would have difficulty asserting their claims individually because the individual damages are fairly modest and constitute tens or hundreds of dollars only.

Plaintiffs contend that their proposed class meets the commonality requirement of Rule 23(a) because questions of law and fact common to all class members predominate over individual issues.  Specifically, plaintiffs assert that in each of their claims, the class members have suffered the same injury, which plaintiffs' assert was caused by defendants' common schemes of deception through uniform misrepresentations.

Plaintiffs also contend that they have met the typicality requirement of Rule 23(a) because the claims of Ms. Stoneback and Mr. Grube are typical of the claims of the proposed class members.  Specifically, plaintiffs assert that plaintiff Grube suffered the exact same injury as the proposed class members -- that he purchased defendants' merchandise based upon defendants' false marketing about the origin of the merchandise. Likewise, although plaintiff Stoneback was previously employed by defendants, plaintiffs contend that her injury is the same as proposed class members because she was acting as a consumer when she purchased defendants' merchandise.

Accordingly, plaintiffs contend that the interests of Ms. Stoneback and Mr. Grube, as the named plaintiffs, are representative and aligned with the interests of the proposed class.

Plaintiffs assert that plaintiffs Grube and Stoneback are adequate representatives of the proposed class because they do not have interests antagonistic to the class.  Specifically, plaintiffs assert Ms. Stoneback's employment lawsuit against ArtsQuest does not create a conflict of interest because that litigation is unrelated to the within dispute and because court approval of any settlement adequately protects the interests of unnamed class members.

-16-

Likewise, plaintiffs also assert that certification of plaintiffs' counsel as class counsel is appropriate because plaintiffs' counsel have substantial experience litigating complex actions, including class actions.

In addition to meeting the requirements of Rule 23(a), plaintiffs contend that the proposed class meets the requirements of 23(b)(2) and (3).

Regarding Rule 23(b)(2), plaintiffs contend that their proposed class may be certified because their claim seeks injunctive relief and defendants have refused to act on grounds that generally apply to the class.

Plaintiffs also contend that the proposed class may be certified under Rule 23(b)(3) because common questions of law and fact predominate each of their claims.

Plaintiffs acknowledge that each individual class member would have to prove that they suffered individualized damages to prevail in their RICO claims and their claims for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law and for fraud.  However, plaintiffs assert that this does not preclude finding predominance of common questions of law and fact for each claim.

Specifically, plaintiffs contend that common questions of law and fact predominate over each of their claims because defendants made common misrepresentations to all class members.

Moreover, plaintiffs contend that individual questions of class members' reliance on misrepresentations can be resolved at a special damages phase of trial.  Therefore, plaintiffs contend that the proposed class should be certified for plaintiffs' RICO UTPCPL, and fraud claims.

<u>Defendants' Contentions</u>

As a preliminary matter, defendants contend that plaintiffs fail to state a cognizable claim.  Specifically, defendants assert that even if parts of the mugs and beer steins were made in China, their country of origin is still Germany because the final transformation occurred in Germany, where the mugs and steins were decorated.  Therefore, defendants contend that the marketing materials were not misleading.

Further defendants contend that even if the mugs should have been labeled in China, defendants did not have knowledge that the steins and mugs should have been labeled as made in China.  Additionally, with respect to the souvenir beer steins (as opposed to the stoneware mugs) defendants assert that, prior to 2012, defendants were not even aware that the souveneir steins were manufactured anywhere except Germany.

Accordingly, defendants contend plaintiffs' motion for class certification should be denied.

However, defendants contend that even if plaintiffs state a cognizable claim, they have not met the requirements for class certification pursuant to Rule 23(a) and 23(b).

Regarding Rule 23(a), defendants contend that plaintiffs' proposed class is not ascertainable because it includes class members who were not deceived by defendants' alleged misrepresentations and therefore proposed class members have not suffered any injury.

Similarly, defendants contend that plaintiffs have failed to establish that the proposed class is sufficiently numerous because the only identifiable class members are the two name representatives, Ms. Stoneback and Mr. Grube.  Moreover, defendants asserts that numerous local newspapers covered this dispute after plaintiffs filed this action, but that ArtsQuest was only contacted by 2 or 3 people and no one has asked for a refund.

Defendants also contend that plaintiffs have not established that the named plaintiffs are typical of members of the proposed class, as required by Rule 23(a), because even if plaintiffs were deceived by defendants' representations concerning the origin of the mugs and steins, plaintiffs have not established that other members of the proposed class were similarly deceived.

-19-

Defendants further assert that the named plaintiffs, Ms. Stoneback and Mr. Grube are not adequate representatives for the proposed class.  Specifically, defendants contend that plaintiff Stoneback's litigation against ArtsQuest concerning the termination of her employment shows that she has a grudge against defendants.  At the very least, defendants contend that Ms. Stoneback's employment dispute creates an appearance that she has interests contrary to those of the proposed class members.

Additionally, defendants contend that because Ms. Stoneback is represented in her employment suit by Swartz Swidler, LLC, plaintiffs' counsel in this suit, plaintiffs' counsel is not an adequate representative of the proposed class.

Likewise, defendants contend that plaintiffs have failed to establish that they meet the requires for class certification pursuant to Rule 23(b).  Specifically, defendants assert that questions of law and fact common to all class members do not predominate the dispute.

More specifically, defendants contend that plaintiffs have failed to establish that any of the purchasers of the mugs and beer steins were induced by the purported representations of defendants, and therefore whether each proposed class member relied on defendants' alleged misrepresentations would require a "mini trial".  Defendants assert that common proof of reliance is

only permitted when the class members are victimized by the same misrepresentations.

Additionally, defendants contend that because plaintiffs propose a potentially nationwide class, Pennsylvania law may not apply to all proposed class members.  Defendants assert that the beer mugs and beer steins could be purchased online and that Musikfest is attended by persons from all over the world.

Moreover, defendants assert that Pennsylvania's consumer protection laws do not apply to proposed class members who are citizens of different states and that state-law variations preclude certifying the proposed class.  Therefore, defendants contend that individualized issues of law preclude class certification under Rule 23(b).

Finally, defendants contend that the putative class action is not superior to other available methods to fairly and efficiently adjudicate the dispute.  Specifically, defendants contend that a class action is not practicable because each class member would have to prove which of the alleged misrepresen-tations caused their injury.

<u>DISCUSSION</u>

<u>Failure to State a Claim</u>

As a preliminary matter, defendants contend that plaintiffs fail to state a cognizable claim.  Specifically,

defendants assert that even if parts of the mugs and beer steins were made in China, their country of origin is still Germany because the final transformation occurred in Germany, where the mugs and steins were decorated.  Therefore, defendants contend that the marketing materials were not misleading.

Further, defendants contend that even if the mugs should have been labeled in China, defendants did not have the requisite knowledge that the steins and mugs should have been labeled as made in China.  Additionally, with respect to the souvenir beer steins (as opposed to the stoneware mugs) defendants assert that, prior to 2012, defendants were not even aware that the souvenir steins were manufactured anywhere except Germany.

However, these contentions do not pertain to the appropriateness class certification.  Rather, defendants' contentions address the merits of plaintiffs' claims without regard to whether the requirements of Rule 23 have been met.[30]

_____

[30]    When considering whether to certify a class, it "may be necessary for the court to probe behind the pleadings" to determine through a "rigorous analysis" that the prerequisites of Rule 23 have been met.  Comcast Corporation v. Behrend, __ U.S. __, __, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515, __ (2013).  However, while a "preliminary inquiry into the merits" of a case is necessary to determine whether Rule 23 has been met, a court may not consider the merits if such a determination is "not necessary to determine a Rule 23 requirement."  In Re: Hydrogen Peroxide Antitrust Litigation, 552 F.3d at 317.

Here, whether plaintiffs have asserted a cognizable claim does not pertain to the requirements of Rule 23.  Rather, if, as defendants contend, the steins and mugs were appropriately marketed as from Germany, instead of China, defendants' contention would provide a basis to dismiss plaintiffs' complaint for failure to state a claim.

(Footnote 30 continued):

A motion for class certification, in the absence of a simultaneous motion to dismiss or motion for summary judgment, "is not a proper vehicle to determine liability."  Adames v. Mitsubishi Bank, LTD, 133 F.R.D. 82, 87 n.1 (E.D.N.Y. 1989). Accordingly, the court "may not transform a motion to certify a class, standing alone, into a motion to determine plaintiffs' likelihood of success on the merits."  Adames, 133 F.R.D. at 87 n.1.[31]

Here, defendants have not filed a motion to dismiss plaintiffs' amended complaint; nor have they filed a motion for summary judgment.  Therefore, I do not address these contentions as a basis to deny plaintiffs' motion for class certification.

However, defendants also contend that plaintiffs' have failed to meet the prerequisites for class certification under Rule 23(a) and (b).

---

(Continuation of footnote 30):

Similarly, if, as defendants contend, plaintiffs' claims require establishing that defendants knew that the steins should not have been marketed as from Germany, and, as defendants also contend, plaintiffs failed to provide evidence that defendants' possessed the requisite knowledge, defendants' contention would provide a basis to grant judgment in favor of defendants.

[31]    But see also Knighton v. Merscorp Inc., 304 Fed.Appx. 285, 286 (5th Cir. 2008), in which the United States Court of Appeals for the Fifth Circuit permitted the district court to treat defendant's opposition to plaintiff's motion for class certification as a 12(b)(6) motion to dismiss because the district court provided notice to the parties and neither party objected.

Class Certification

To obtain class certification, plaintiffs must establish that each of the elements of Rule 23(a) are met, together with one of the requirements of Rule 23(b). Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). The "party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." Marcus v. BMW of North America, LLC, 687 F.3d 583, 591 (3d Cir. 2012).

A. Rule 23(a)

Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").

1. Numerosity

Satisfaction of the numerosity requirement does not require evidence of the exact number or identification of the members of the proposed class. Saunders v. Berks Credit and Collections, Inc., 2002 U.S.Dist. LEXIS 12718 at *16 (E.D.Pa. Jul. 12, 2002) (DuBois, J.). Rather, the proposed class must be so numerous that joinder is impracticable. Id.

-24-

While there is no fixed number of class members required to establish numerosity, "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) quoting 3B Moore's Federal Practice para. 23.05[1] at n.7 (1978).

However, while plaintiffs are not required to establish an exact number of class members, a party seeking class certification must show that the number of proposed class members is not merely speculative. Golden v. City of Columbus, 404 F.3d 950, 966 (6th Cir. 2005).

Here, plaintiffs' proposed class includes all customers who bought steins or mugs from the period of six years prior to the filing of plaintiffs' initial complaint through the present. During this period, ArtsQuest sold hundreds of mugs and steins to hundreds of different customers.

ArtsQuest maintains a list of customers who purchased the beer steins. Moreover, defendants readily admit that ArtsQuest sold approximately 147 steins and 250 mugs annually.[32]

---

[32]    See Defendants' Exhibit 1.  The exact number of customers is not readily apparent from ArtsQuest's customer list.  The customer list consists of a spreadsheet listing the name, contact information, and which steins were purchased by each customer.  However, a significant number of spaces on the spreadsheet are listed as "OPEN".  It is not clear whether such a designation indicates that a customer purchased a stein, but did not provide contact information, or whether ArtsQuest did not sell that numbered stein.

Undoubtedly, some customers purchased multiple mugs and multiple steins.  For example, plaintiff Grube purchased beer steins from ArtsQuest each year from 2005 until 2011 and mugs from ArtsQuest each year from 2005 through 2012.  Therefore, the total number of mugs and steins sold exceeds the total number of proposed class members.

However, plaintiffs have established that the proposed class is sufficiently numerous so that joinder would be impracticable.  Even if the identified customers on ArtsQuests' customer lists were the only purchasers of the mugs and steins, the class would exceed 100 members.  Therefore, the numerosity requirement of Rule 23(a) is met.

### 2. Commonality

Commonality requires a showing of the existence of questions of law or fact common to the class.  A common question is one arising from a common nucleus of operative facts. Saunders, 2002 U.S.Dist. LEXIS 12718 at *17.

Generally, where defendants have engaged in standardized conduct towards members of the proposed class, common questions of law and fact exist.  Id.  In fact, a single common question is sufficient to satisfy this requirement.  Id. citing In re Prudential Insurance Company, 148 F.3d 283, 310 (3d Cir. 1998).

-26-

Here, plaintiffs' claims have common questions of law and fact.  Plaintiffs' allege, and have provided evidence that defendants made misrepresentations in their marketing materials and purchase order forms concerning the origin of the Musikfest beer steins and mugs.  Whether these materials constituted misrepresentations, and whether defendants intended to deceive consumers is a common question of law and fact, common to the named plaintiffs and the proposed class.  Therefore, plaintiffs have met the commonality requirement of Rule 23(a).

### 3. Typicality

The third element of Rule 23(a) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  Fed.R.Civ.P. 23(a).

In considering whether the typicality requirement is met, a court must consider "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  Saunders, 2002 U.S.Dist. LEXIS 12718 at *19.

If defendants have a unique defense to the claims of the named plaintiff, there is a danger that absent class members will suffer if their representative is preoccupied with the defenses unique to the named plaintiff's claims.  Beck, 457 F.3d at 296.  Accordingly, a proposed class representative is

not typical if the representative is subject to a unique defense that is likely to become a "major focus" of the litigation. Id. at 301.

Here, the claims of the named plaintiffs' are typical of those of the proposed class.  Both the named plaintiffs and the proposed class members are seeking to recover for the alleged deceptive business practices and fraudulent conduct of defendants in connection with the sale and marketing of the steins and mugs sold at Musikfest.

Additionally, plaintiff Stoneback's employment dispute does not does not create unique claims or defenses rendering her claims atypical of the class because plaintiff Stoneback's employment case was filed as a separate action.  Moreover, defendants have not offered a unique defense to the named plaintiffs that could become a major focus of litigation.

Therefore, the claims of the named plaintiffs are typical of the claims of the proposed class.

### 4. Adequacy

Adequacy of the class representative requires establishing that (1) the class representative does not have interests antagonistic to the interests of the class; and (2) plaintiff's attorney is competent to conduct a class action. Saunders, 2002 U.S.Dist. LEXIS 12718 at *21.

The "adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." Beck, 457 F.3d at 296. Not every conflict between the named representative and the proposed class will prevent class certification. Rather, the conflict must be "fundamental" to violate Rule 23(a)(4). In re: Literary Works in Electronic Databases Copyright Litigation, 654 F.3d 242, 249 (2nd Cir. 2011).

However, an "unduly antagonistic litigant, or litigant who "bears a grudge against the defendant is not an appropriate class representative. Kamerman v. Ockap Corporation, 112 F.R.D. 195, 197 (S.D.N.Y. 1986). This is because a class representative has a "duty to use wise judgment in negotiating and approving a fair and proper settlement". Norman, D.D.S., P.C. v. ARCS Equities Corp., 72 F.R.D. 502, 506 (S.D.N.Y. 1976).

Here, defendants contend that plaintiff Stoneback is an inadequate representative because she maintains a grudge against ArtsQuest. Defendants assert that Ms. Stoneback's antagonism is demonstrated by her lawsuit against ArtsQuest based on her termination. In fact, defendants assert that plaintiff Stoneback would not have brought this lawsuit if defendants accepted her offer to settle her wrongful termination claims.[33] Accordingly,

---

[33] See Defendants' Exhibit 4.

-29-

defendants' contend that plaintiff Stoneback is an inadequate representative.

Further, defendants contend that Swartz Swidler, LLC is an inadequate representative of the proposed class because it represents plaintiff Stoneback in her employment dispute.

Plaintiffs admit that Ms. Stoneback was involved in a dispute concerning her termination as an employee of ArtsQuest. However, plaintiffs assert that Ms. Stoneback is an adequate representative because her interests are aligned with the proposed class.

Neither party has cited any authority which indicates whether a separate lawsuit initiated by a proposed class representative against the defendant in the putative class action creates a fundamental conflict rendering the named plaintiff an inadequate representative of the proposed class.

However, when a proposed class representative is involved in separate pending litigation against the same defendant "absent class members [are] at risk of being sold out to achieve a greater recovery in the named plaintiffs' separate action". Levias v. Pacific Maritime Association, 2010 U.S.Dist. LEXIS 11495 at *17 (W.D.Wash. Jan. 25, 2010).

Here, however, to the extent Ms. Stoneback *had* a conflict of interest during the pendency of her separate lawsuit

against ArtsQuest, such a conflict is no longer present because her lawsuit against ArtsQuest concerning the termination of her employment has concluded.  Therefore, absent class members are not at a risk of being sold out by plaintiff Stoneback proceeding as a class representative.  See Levias, 2010 U.S.Dist. LEXIS 11495 at *17.[34]

Moreover, defendants have not provided any basis for why plaintiff Michael Grube is not an adequate representative as the class.  Therefore, I conclude that plaintiffs have established that Ms. Stoneback and Mr. Grube are adequate class representatives as required by Rule 23(a)(4).

---

[34]    Prior to submitting the Declaration of Rebecca Stoneback, attached to plaintiffs' praecipe to file declaration, plaintiffs did little to refute defendants' contention that Ms. Stoneback harbors a grudge against ArtsQuest. In fact, the only evidence submitted by plaintiffs concerning their adequacy of class representatives were the affidavits of Ms. Stoneback and Mr. Grube, that indicate which beer steins and mugs they purchased.

However, in her declaration, Ms. Stoneback avers that she considered her suit concerning her termination from ArtsQuest as separate from the within action.  Ms. Stoneback further avers that her duties as a class representative were not, and are not, affected by her other suit.

Defendant objects to plaintiff Stoneback's pracecipe to file declaration because Ms. Stoneback's declaration contains averments beyond notifying the court that her pending lawsuit had resolved.  Defendant contends that the additional information should have been raised through testimony at the April 2, 2013 class certification hearing.  (See Objection to Plaintiff Stoneback's Praecipe to File Declaration in Support of Her Motion for Class Certification and to the Declaration of Rebecca Stoneback, which objection was filed June 4, 2013 (Document 31)).

However, even if I do not consider plaintiffs' declaration, beyond taking notice that her other lawsuit has resolved, such information is sufficient to refute defendants' contention that plaintiff Stoneback has a conflict of interest rendering her an inadequate class representative. Because Ms. Stoneback's suit concerning her termination has resolved, I have no reason to believe that she has a "fundamental" conflict of interest.  See In re: Literary Works in Electronic Databases Copyright Litigation, 654 F.3d at 249.

-31-

Defendants also contend that Swartz Swidler, LLC is an inadequate representative of the proposed class because it represented plaintiff Stoneback in her employment dispute. However, Ms. Stoneback's lawsuit concerning the termination of her employment has concluded.  Therefore, as explained above, plaintiffs' counsel does not have a fundamental conflict of interest rendering it inadequate to represent the class.

Moreover, plaintiffs' counsel, Justin L. Swidler, Esquire, and Richard S. Schwartz, Esquire, have handled numerous class action lawsuits, some of which are substantially larger than the within dispute.[35]  Accordingly, I conclude that plaintiffs have established that Swartz Swidler, LLC is qualified to represent the class as class counsel, as required by Rule 23(a)(4).

Because plaintiffs have established each of the requirements under Rule 23(a), it is necessary to determine whether they have met the requirements of Rule 23(b).

B. Rule 23(b)

Even if the elements of Rule 23(a) are met, a party seeking class certification must meet one of the requirements of Rule 23(b).  Baby Neal, 43 F.3d at 55 (3d Cir. 1994).  Here,

---

[35]     See Plaintiffs' Exhibits J and K.

plaintiffs seek certification under Rule 23(b)(2) and
Rule 23(b)(3).

### 1. Rule 23(b)(2)

Rule 23(b)(2) provides that a class action may be
maintained if "the party opposing the class has acted or refused
to act on grounds that apply generally to the class, so that
final injunctive relief or corresponding declaratory relief is
appropriate respecting the class as a whole".

However, Rule 23(b)(2) "does not extend to cases in
which the appropriate final relief relates exclusively or
predominantly to money damages."  Beck v. Maximus, Inc.,
457 F.3d 291, 301 (3d Cir. 2006) quoting Fed.R.Civ.P. 23(b)(2)
advisory committee's note.

Here, plaintiffs claims relate predominantly to money
damages.  Moreover, plaintiffs have not established that they are
"likely to suffer a future injury", and therefore do not have
standing to seek injunctive relief in this matter.  See McNair v.
Synapse Group, Inc., 672 F.3d 213, 223 (3d Cir. 2012).

Rather, because plaintiffs now know the origin of the
steins and mugs, it is difficult to discern how they would be
injured by future misrepresentations from defendants.[36]

---

[36]     Additionally, although plaintiffs assert that defendants have
"refused to act" and continue to falsely advertise that the mugs and steins

(Footnote 36 continued):

Therefore, certification pursuant to Rule 23(b)(2) is not appropriate.

### 2. Rule 23(b)(3)

Rule 23(b)(3) provides that a class may not be certified unless  the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Accordingly, the requirements of Rule 23(b)(3) are known as predominance and superiority.  In re: Hydrogen Peroxide Antitrust Litigation, 552 F.3d at 310.

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation". Id.  quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  This standard is "far more demanding" than the commonality requirement of Rule 23(a). Id.

The predominance requirement will not be met if proof of essential elements of the cause of action requires individual

---

(Continuation of footnote 36):

originated in Germany, defendants appear to have at least softened their representations concerning the origins of the beer mugs and steins.  For example, the 2012 Musikfest steins' insignia states that the body of the steins were made in China, and that all other components were made in Germany.

treatment.  In re: Hydrogen Peroxide Antitrust Litigation,
552 F.3d at 311.  Accordingly, in order to determine whether
Rule 23(b) is met, a court must examine the elements of a
plaintiff's claims "through the prism" of Rule 23.  Id.

Therefore, in order to obtain class certification, a
plaintiff "must demonstrate that each essential element of his
claim is capable of proof at trial through evidence that is
common to the class rather than individual to its members.
Malack v. BDO Seidman, LLP, 617 F.3d 743, 746 n.5 (3d Cir. 2010).
If proof of an essential element of the cause of action requires
"individual treatment," then class certification is "unsuitable."
In Re: Hydrogen Peroxide Antitrust Litigation, 552 F.3d at 311.

Plaintiffs assert claims for violations of RICO and
Pennsylvania's Unfair Trade Practices Consumer Protection Law,
and a claim for common law fraud.

### a. RICO

Title 18 of United States Code Section 1962(c) provides
that it is "unlawful for any person employed by or associated
with any enterprise engaged in, or the activities of which
affect, interstate or foreign commerce, to conduct or
participate, directly or indirectly, in the conduct of such
enterprise's affairs through a pattern of racketeering
activity...."  18 U.S.C. § 1962(c).  "Any person injured in his

business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...."  18 U.S.C. § 1964.

To establish a civil RICO claim under § 1962(c), a plaintiff must show that defendants (1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity, (5) which results in injury to the plaintiff's business or property.  Wallace v. Powell, 288 F.R.D. 347, __, (M.D.Pa. 2012).

In this case, plaintiffs allege RICO violations based on mail and wire fraud.  In order sustain a charge of mail fraud, plaintiffs must establish (1) that defendants undertook a scheme to defraud; (2) with the specific intent to defraud; and (3) that they used the mail to execute the scheme.  Brownwell v. State Farm Mutual Insurance Company, 757 F.Supp. 526, 538 (E.D.Pa. 1991) (Waldman, J.) citing United States v. Burks, 867 F.2d 795, 797 (3d Cir. 1989).[37]

Here, while the first four elements of plaintiffs' RICO claims may be disputed, they are susceptible to common proof.  Specifically, each of the first four elements focus on the conduct of the defendants, rather than the individual members of the proposed class.  The conduct of the defendants, the existence of an enterprise, and whether defendants engaged in a pattern of

---

[37]   The elements of wire fraud are the same, except wire fraud applies to electronic communications.  Kronfield v. First Jersey Nationl Bank, 638 F.Supp. 1454, 1470 (D.N.J. 1986).

racketeering activity will predominantly involve questions common to the named plaintiffs and the proposed class members.  See Id.

Defendants assert that plaintiffs have failed to show that defendants had the specific intent to defraud.  However, whether defendants had specific intent to defraud is susceptible to common proof.  Plaintiffs allege, and have produced evidence, that defendants made representations concerning the origins of the beer steins and mugs through written marketing materials, and purchase order forms available to all customers.  Therefore, whether defendants engaged in mail fraud does not present individual questions with respect to each class member.

However, the fifth element of plaintiffs' RICO claims, an injury to plaintiffs' business or property, is not as conducive to common proof.

Plaintiffs acknowledge that a question of whether "each individual plaintiff suffered individualized damages and each relied upon Defendants' common misrepresentations" requires individualized proof.[38]  However, plaintiffs assert that individual questions concerning class members' reliance does not preclude finding that common questions of law and fact predominate plaintiffs' claims because defendants made uniform misrepresentations.

---

[38]     Plaintiff's Brief in Support of Motion for Class Certification, page 15.

The Advisory Committee Notes to the 1966 Amendments to Rule 23 state, in pertinent part:

> [A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.  On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

In a case involving multiple misrepresentations or degrees of reliance, common issues still may predominate if questions of causation are not "extraordinarily complex," or if a "presumption of reliance" is appropriate.  Rodriguez v. McKinney, 156 F.R.D. 112, 115 (E.D.Pa. 1994) (Brody, J.) (internal citations omitted).

Reliance may be presumed only "where it is logical to do so."  Id. citing Sharp v. Coopers & Lybrand, 649 F.2d 175, 188 (3d Cir. 1981).  An action based substantially on oral, as opposed to written misrepresentations, is generally inappropriate for treatment as a class action.  Seiler v. E.F. Hutton & Company, Inc., 102 F.R.D. 880, 887 (D.N.J. 1984).

Here, defendants made multiple representations which referred to Germany as the origin of the beer mugs and steins. These representations, which were made on purchase order forms,

marketing materials, and as an insignia on the mugs and steins themselves, were written rather than oral representations.

However, it is not clear from the record which members of the proposed class viewed the marketing materials or utilized the purchase order forms containing the alleged misrepresentations. For example, ArtsQuest sold mugs and steins online and through the ArtsQuest gift shop. However, the record does not indicate where the customers purchased the merchandise.

Nor does the record indicate how ArtsQuest disseminated its advertisements concerning the mugs and steins or which class members came in contact with such advertisements.

Moreover, while the mugs and steins contained an insignia stating the merchandise was designed exclusively by Gerz in Germany, a presumption of reliance in this case would not be logical.

First, despite numerous news reports on the within lawsuit, since this action was filed, only two or three purchasers of the Musikfest beer steins and mugs have contacted ArtsQuest seeking an explanation concerning the origin of the merchandise, and none of the purchasers have sought a refund. If a substantial portion of the proposed class relied upon ArtsQuests' representations concerning the origin of the steins

and mugs when they purchased the merchandise, presumably more customers would have complained to ArtsQuest.

Second, in 2012, each Musikfest mug contained a sticker indicating that the body of the mug was made in China, but that the mug was decorated in Germany.  Even with this clarification, plaintiff Grube purchased a 2012 Musikfest mug for the same price that the mugs were sold in previous years.

If plaintiff Grube considered the origin of the mug to be material, presumably he would not have purchased the mug once he learned the body was made in China.  Therefore, it is not even clear whether Mr. Grube relied on defendants' representations when purchasing the beer steins and mugs.  Accordingly, presuming the other class members relied upon defendants' representations would be inappropriate.[39]

Although a presumption of reliance is not warranted, plaintiffs assert they are not required to prove reliance under RICO, and that they have established an injury because defendants' misrepresentations affixed an inflated value of the mugs and steins.

Using the mail to execute a scheme to defraud constitutes mail fraud, and therefore qualifies as a predicate

---

[39]     In fact, although both Ms. Stoneback and Mr. Grube indicate that ArtsQuest represented through labeling and advertising that the mugs and steins were made in Germany, neither aver that they relied upon those representations in purchasing the merchandise (See Plaintiffs' Exhibits G and H).

act of racketeering under RICO "even if no one relied on any misrepresentation."  Bridge v. Pheonix Bond & Indemnity Co., 553 U.S. 639, 648, 128 S.Ct. 2131, 2138, 170 L.Ed.2d 1012, 1021 (2008).  Accordingly, a plaintiff is not required to prove he relied on a defendant's misrepresentations in order to assert a claim under RICO.  Bridge v. Pheonix Bond & Indemnity Co., 553 U.S. at 659, 128 S.Ct. at 2144, 170 L.Ed.2d at 1027.

However, a plaintiff still must prove that he suffered an injury to his business or property that was proximately caused by the racketeering activity.  Bridge v. Pheonix Bond & Indemnity Co., 553 U.S. at 654, 128 S.Ct. at 2141, 170 L.Ed.2d at 1024. Thus, in order to establish an injury, a plaintiff who alleges an injury "by reason of" a pattern of mail fraud must show that *someone* relied on the defendant's misrepresentations.  Id.[40]

---

[40]     In Bridge, the Cook County, Illinois Treasurer's Office held a public auction at which it the sold tax liens the county had acquired on the property of delinquent taxpayers.  Prospective buyers bid on liens, but not in cash amounts.  Instead, bids were stated as the percentage penalty the property owner must pay the winning bidder in order to clear the lien. 553 U.S. at 642, 128 S.Ct. at 2135, 170 L.Ed.2d at 1017.

The bidder willing to accept the lowest penalty won the auction and obtained the right to purchase the lien in exchange for paying the outstanding taxes on the property.  The property owner then could redeem the property by paying the lienholder the delinquent taxes, plus the penalty established at the auction and an additional 12% penalty on any taxes subsequently paid by the lienholder.  Id.

If the property owner did not redeem the property within the statutory redemption period, the lienholder could obtain a tax deed for the property, effectively purchasing the property for the value of delinquent taxes.  Id.

In the event multiple bidders offered a 0% penalty, the county allocated parcels on a rotational basis amongst the 0% bidders.  However, to

(Footnote 40 continued):

Based on <u>Bridge</u>, plaintiffs contend that, even if class members purchased the mugs or steins without considering the misrepresentations, they nevertheless were injured because they paid an inflated price for the merchandise.  Plaintiffs assert that mugs and steins manufactured in Germany are worth more than those manufactured in China.

However, absent someone's reliance on defendants' misrepresentations, plaintiffs' purported injury would not be caused "by reason" of defendants' racketeering activity.[41]

---

<u>(Continuation of footnote 40)</u>:

prevent bidders from sending additional agents to bid on their behalf and thereby obtain a disproportionate share of liens, the county required each bidder to submit bids in its own name only and prohibited a bidder from using agents to submit simultaneous bids.  553 U.S. at 643, 128 S.Ct. at 2135, 170 L.Ed.2d at 1017-1018.

However, the <u>Bridge</u> defendants fraudulently obtained a disproportionate share of liens by asserting to the county that were complying with the county's bidding rules, when in fact they sent their agents to bid on liens.  <u>Id.</u>

The <u>Bridge</u> plaintiffs, who were other bidders who obtained fewer liens as a result of defendants' scheme, sued for violations of RICO, even though they had not received, or relied upon, defendants' fraudulent representations concerning their compliance with the county's bidding procedures.  <u>Id.</u>

The United States Supreme Court held that first-party reliance was not required to prove violations of RICO predicated on mail fraud.  Plaintiffs suffered an injury because the *county* relied on defendants' representations, and defendants obtained a disproportionate share of liens at plaintiffs' expense.  553 U.S. at 649, 128 S.Ct. at 2139, 170 L.Ed.2d at 1021-1022.

[41]   In this respect, this case is distinguishable from <u>Bridge</u>.  For example, plaintiffs do not allege that defendants represented to a third-party seller that the merchandise was manufactured in Germany and that the third-party seller charged an inflated price to plaintiffs, thereby injuring plaintiffs even though plaintiffs could not have relied upon the misrepresentation.

Rather, plaintiffs allege that defendants made misrepresentations

(Footnote 41 continued):

Moreover, plaintiffs have not produced any evidence that the prices they paid for the mugs and steins were inflated. According to M. Cornell Importers, Inc., defendants' importer, steins manufactured in Germany would cost ArtsQuest between $35 and $50, compared to steins manufactured in China, which would cost Artquest between $14.58 and $20.00.

However, plaintiffs have not produced any evidence comparing the actual value of steins and mugs manufactured in Germany with the actual value of steins and mugs manufactured in China.  Without providing such evidence, plaintiffs cannot establish that common issues predominate their RICO claims.  See Comcast Corp. v. Behrend, __ U.S. __, __, 133 S.Ct. 1426, 1432-1433, 185 L.Ed. 515, 521-522 (2013), in which the United States Supreme Court held that a party seeking class certification is required to establish that damages are susceptible of measurement across the entire class for purposes for Rule 23(b)(3).[42]

---

(Continuation of footnote 41):

concerning the origin of the merchandise directly to consumers.  Under such a theory of liability, reliance on defendants' misrepresentations is required to show an injury by reason of mail fraud.

[42]   ArtsQuest charged consumers $17.99 per mug between 2005 and 2012. In 2012 a sticker on the bottom of the mugs identified that the body of the mug was made in China.  Yet ArtsQuest did not lower its price for the 2012 mug, which suggests that the mugs' price was not impacted by how the origin of the mug was advertised to consumers.  Accordingly, plaintiffs have not established that proposed class members, who did not rely on defendants' purported misrepresentations, were damaged by paying $17.99 for the mug.

(Footnote 42 continued):

Because plaintiffs have failed to establish that common issues of fact and law predominate the issue of whether the proposed class suffered an injury to their business or property, plaintiffs' motion for class certification is denied as it pertains to their RICO claims.

### b. Unfair Trade Practices and Fraud Claims

Plaintiffs also seek certification of their proposed class with respect to their claim for violations of Pennsylvania's Unfair Trade Practices Consumer Protection Law, and claim for common law fraud.  However, like the RICO claims, plaintiffs fail to establish that common issues of fact and law predominate over each essential element of their UTPCPL and fraud claims.

The UTPCPL provides a private cause of action to a person who "purchases or leases goods or services primarily for personal, family or household purposes" and suffers an ascertainable loss as result of "[u]nfair methods of competition" or "unfair acts or practices".  73 P.S. § 201-9.2.

---

(Continuation of footnote 42):

Nor have plaintiffs established that the price of the beer steins was inflated.  Between 2009 and 2011 ArtsQuest charged consumers $69.99 for steins.  However, plaintiffs have not provided any evidence of the actual value of stein manufactured in Germany as opposed to a stein manufactured in China.  Absent such evidence, or evidence that class members relied upon defendants' misrepresentations, plaintiffs cannot establish that the class was damaged by defendants' misrepresentations.

Among the enumerated unfair practices are "using deceptive representations or designations of geographic origin in connection with goods or services" and "engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding".  73 P.S. § 201-2.4.

A private plaintiff alleging violation of the UTPCPL must prove that he justifiably relied on defendant's wrongful conduct or representation and that he suffered a harm as a result of that reliance.  Hunt v. United States Tobacco Company, 538 F.3d 217, 221 (3d Cir. 2008).

Whether a particular plaintiff justifiably relied on a defendant's deceptive conduct is "typically a question of fact for the fact-finder to decide, and requires consideration of the parties, their relationship, and the circumstances surrounding their transaction."  Cohen v. Chicago Title Insurance Company, 2013 U.S.Dist. LEXIS 31735 at *7 (E.D.Pa. Mar. 7, 2013) (Sanchez, J.).

Accordingly, numerous courts have not certified, or have decertified, classes pursuing UTPCPL claims because the justifiable reliance requirement renders individual issues predominant over issues common to the class.  Id. at *7 n.4 (collecting cases).

Similarly, a common law fraud claim under Pennsylvania law requires proof of justifiable reliance.  Sevin v. Kelshaw, 417 Pa.Super. 1, 9, 611 A.2d 1232, 1236 (Pa.Super. 1992); see also Glatthorn v. Independence Blue Cross, 34 Fed.Appx. 420, 422 (3d Cir. 2002), in which the court indicated that a claim under the UTPCPL has the same elements as a common law fraud claim.

Therefore, like UTPCPL claims, numerous courts have found individual issues to predominate over common issues in fraud claims.  Cohen, 2013 U.S.Dist. at *7 n.4.

Here, plaintiffs have failed to establish that common issues predominate over individual issues with respect to their UTPCPL and fraud claims.  For both claims, plaintiffs would have to show that each class member justifiably relied on defendants' alleged misrepresentation.  In this case, plaintiffs have not even established which class members were exposed to which misrepresentations concerning the origin of the steins and mugs.

Because individual issues predominate over whether proposed class justifiably relied on defendants' alleged misrepresentations class certification is not appropriate with respect to plaintiffs' UTPCPL and fraud claims.  Accordingly, plaintiffs' motion for class certification is denied with respect to plaintiffs' UTPCPL and fraud claims.

Because plaintiffs have failed to establish that common issues predominate over their claims, as required by Rule 23(b)(3), I need not address whether a class action is superior to other available methods for adjudicating the controversy.

## CONCLUSION

For all of the forgoing reasons, plaintiffs' motion for class certification is denied.